632 S.E.2d 29

**Ulrika BROWNING, et al., Plaintiffs Below, Appellants**

v.

**Judith HALLE, et al., Defendants Below, Appellees.**

No. 32672.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 2005.

Decided Dec. 1, 2005.

Dissenting Opinion of Justice Starcher Dec. 15, 2005.

William E. Ford, III, Ford Law Office, Clarksburg, for the Appellants.

Steven B. Nanners, Rexroad, Willet & Nanners, Buckhannon and Curtis G. Power, III, Bowles Rice McDavid Graff & Love, Winchester, VA, for the Appellees.

**PER CURIAM:**

Appellants Ulrika Browning, Timothy Higgins, and Wendy Higgins, appeal the October 6, 2004, order of the Circuit Court of Upshur County that granted summary judgment to Appellees, Judith Halle and Andreas Halle, in Appellants' action against Appellees for nuisance, interference with riparian rights,

and negligence. For the reasons that follow, we affirm the circuit court's order.

## I.

## FACTS

Appellants and plaintiffs below, Ulrika Browning, Timothy Higgins, and Wendy Higgins, and Appellees and defendants below, Judith Halle and Andreas Halle, are residents on what is commonly referred to as the Laurel Run watershed in Upshur County. Appellees live upstream from Appellants and maintain Arabian horses on pasture land adjacent to their home. Also, Appellees have contracted for timbering of their property in order to provide for pasture land and other improvements. Prior to filing the underlying action, Appellants used the raw, untreated stream water from Laurel Run for domestic purposes, with the primary purpose being for drinking water.

On December 9, 2002, Appellants filed an action against Appellees in which they set forth causes of action for nuisance, interference with riparian rights, and negligence. Appellants alleged that Appellees' use of their property for timbering and other activities have adversely affected the purity, quality, and quantity of water flowing through Laurel Run and upon Appellants' property. They further averred that Appellees' use of their property has interfered with Appellants' quiet enjoyment of their land, and that Appellees' negligence caused damage to their land.

On September 7, 2004, Appellees filed a motion for summary judgment with an attached memorandum of law and exhibits. Subsequently, on September 13, 2004, Appellants filed a response in opposition to Appellees' motion for summary judgment with attached exhibits. After a hearing on the motion, the circuit court entered its October 6, 2004, order granting summary judgment to Appellees.

Thereafter, Appellants filed a motion for relief from the summary judgment order, accompanied by additional exhibits, which apparently was never ruled upon by the circuit court.[1] Appellants ultimately filed their petition for appeal from the summary judgment order which was granted by this Court. We now consider the issues raised by Appellants in their petition.

## II.

## STANDARD OF REVIEW

When called upon to review a circuit court's grant of summary judgment, this Court is guided by several established principles. First, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Also, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In other words, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syllabus Point 3, *Painter, supra*. In addition, "[w]e . . . must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter*, 192 W.Va. at 192, 451 S.E.2d at 758 (citations omitted). Finally, when deciding whether a summary judgment is appropriate, we apply the same test that the circuit court should have applied. *Conrad v. ARA Szabo*, 198 W.Va. 362, 480 S.E.2d 801 (1996).

## III.

## DISCUSSION

Appellants raise a total of ten assignments of error in their appeal. We believe that these assignments of error can be fairly carved down to four issues.[2] The first issue

---

1. *See* footnote 4 *infra.*

2. Appellants also allege that the circuit court erred in granting summary judgment when Ap-

pellants contend that there are genuine issues of material fact for a jury to decide; in failing to construe the facts in the light most favorable to

we address is whether the circuit court erred in granting Appellees' motion for summary judgment on Appellants' claims for nuisance, interference with riparian rights, and negligence.

▉▉ Concerning our nuisance law, we have recognized that "[t]he crux of a nuisance case is unreasonable land use." *Booker v. Foose*, 216 W.Va. 727, 730, 613 S.E.2d 94, 97 (2005), *quoting Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880 (Mo.1985). This Court has held that "[a] private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." Syllabus Point 1, *Hendricks v. Stalnaker*, 181 W.Va. 31, 380 S.E.2d 198 (1989). "An interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." Syllabus Point 2, *Hendricks, supra.* Further,

> As a general rule, a fair test as to whether a business or a particular use of a property in connection with the operation of the business constitutes a nuisance, is the reasonableness or unreasonableness of the operation or use in relation to the particular locality and under all the existing circumstances.

Syllabus Point 2, *Mahoney v. Walter*, 157 W.Va. 882, 205 S.E.2d 692 (1974).

With respect to Appellants' cause of action for interference with riparian rights, this Court has explained:

> The riparian owner has a property interest in the flow of a natural watercourse through or adjacent to his property.
>
> > The right of enjoying this flow without disturbance, interference, or material diminution by any other proprietor is a natural right, and is an incident of property in the land, like the right the proprietor has to enjoy the soil itself without molestation from his neighbors.

The right of property is in the right to use the flow, and not in the specific water.

The riparian owner's right is to have the water pass his land in its natural course. Each proprietor may make any use of the water flowing over his premises which does not essentially or materially diminish the quantity, corrupt the quality or detain it so as to deprive other proprietors or the public of a fair and reasonable participation in its benefits. The obstruction or diversion of the natural watercourse or the introduction into it of sediment, sludge, refuse or other materials which corrupt the quality of the water by upper riparian owners or users constitutes an infringement of the lower riparian owner's property right, which may be enjoined or give rise to a cause of action for damages. *Snyder v. Callaghan*, 168 W.Va. 265, 271–272, 284 S.E.2d 241, 246 (1981) (internal quotations and citations omitted).

Finally, in regard to a cause of action for negligence, our law states that "[i]n the matters of negligence, liability attaches to a wrongdoer ... because of a breach of duty which results in an injury to others." Syllabus Point 2, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syllabus Point 3, *Sewell, supra.*

▉ Appellants essentially allege that they traditionally have used the waters of Laurel Run for drinking, domestic, agricultural and other purposes. They further aver that Appellees' timbering, construction, and other activities have adversely affected the color, drinking purity, and watershed and flood

---

Appellants; and in finding that Appellants failed to produce competent evidence to rebut the findings of Appellees' experts with regard to Appellees' adherence to best management timbering practices, their method of waste water treatment, and the lack of a causal connection between

those activities and Appellants' use of the raw stream water for drinking and other domestic purposes. Separate consideration of these specific assignments of error is not necessary to decide this case.

mitigation qualities of Laurel Run. Specifically, Appellants claim that Appellees' activities have caused increased sedimentation and increased fecal coliform contamination. According to Appellants, as a result of the harm caused to Laurel Run by Appellees' activities, they have had to acquire alternative sources for their traditional uses of the creek, they have experienced substantial and unusual flooding, and they have had to obtain flood insurance.

To support their claim that Appellees damaged Laurel Run, Appellants presented the reports of two experts, Rick Eades and Dr. Benjamin Stout. Mr. Eades reported that, after observing conditions on Appellees' property, that Appellees' timber harvesting activities contributed to unusual sediment loads in Laurel Run during storms. He further stated that there were sources on Appellees' property for fecal coliform contamination of surface waters. In his report, Dr. Stout opined that several fecal coliform samples taken from Laurel Run during a one-day heavy rainfall event indicated increasing fecal coliform that is indicative of deteriorating surface water conditions from the headwaters to the mouth of the tributary draining Appellees' farm. He further reported that this contamination extended well into Laurel Run.

Attached to Appellees' motion for summary judgment were portions of transcripts in which Appellees' expert witnesses opined that Appellees' timbering practices did not substantially contribute to sediment loading of Laurel Run. Appellees also attacked the evidence proffered by Appellants. Specifically, Appellees presented a portion of Dr. Stout's deposition testimony in which he testified that reclamation measures following the timbering activities on Appellees' property had substantially eliminated sediment run-off into the stream, and that there are other sources, besides that of Appellees' timbering activities, that account for sediment run-off into Laurel Run. Appellees also offered a portion of Mr. Eades' deposition testimony in which he stated that his assessment of sediment run-off into Laurel Run did not include an investigation of other sources of sedimentation.

Further, on the issue of fecal coliform contamination, Appellees presented findings of the State Department of Environmental Protection (hereafter "DEP"), after sampling the Laurel Run watershed, that residential, agricultural, and other activity in the area are not significant sources of fecal coliform during the sampling period. They also introduced the report of Dr. Laidley Eli McCoy who concluded after sampling that the fecal coliform levels in the stream water coming from Appellees' property were within permitted levels under State Water Quality Standards and did not render the stream water unfit for any designated use. Further, Appellees presented evidence that Dr. Stout's limited sampling for fecal coliform levels did not conform to the sampling required under State Water Quality Standards. Finally, Appellees' adduced evidence that all experts in this case agreed that Appellants' use of raw stream water from Laurel Run for drinking and other domestic uses is unsafe due to the presence of naturally occurring animal fecal material and other organisms in untreated stream water.

■ We find that Appellees' made a properly supported motion for summary judgment below and showed by affirmative evidence that there is no genuine issue of material fact that Appellees' activities on their property did not introduce sediment and fecal coliform into Laurel Run so as to materially increase the stream's quantity or materially diminish its quality for any reasonable uses of the stream by Appellants. We have held that,

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syllabus Point 3, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

Thus, after Appellees made their properly supported motion for summary judgment, the burden shifted to Appellants' to rehabilitate their evidence, produce additional evidence, or submit an affidavit explaining the need for further discovery, none of which Appellants successfully did.

The record indicates that Appellants, in response to Appellees' motion for summary judgment, produced Mrs. Halle's deposition testimony that she had the drain to the concrete floor of Appellees' barn plumbed into their Mighty Mac home areation human waste treatment unit. This unit treats human waste and discharges treated effluent into the Laurel Run stream. Appellants also presented the deposition testimony of Randy Reger, the manufacturer and installer of the unit, that to run animal waste through the unit would compromise its operation and discharge effluent that would degrade the quality of the water in the stream. We find, however, that this additional evidence is insufficient to show a genuine issue of material fact for trial on the issue of actual injury to Laurel Run. As noted above, Appellees had already established by competent evidence that they had not materially diminished the quality of Laurel Run for reasonable uses. Absent evidence of material harm to the stream, evidence of Appellees' improper use of their waste treatment unit is irrelevant.

In their brief to this Court, Appellants assert that the verified allegations in their complaint are sufficient to withstand a summary judgment motion. This Court has indicated previously that a verified complaint is a sworn statement which may create questions of fact when considered in opposition to an affidavit filed by a party moving for summary judgment. *Foster v. Good Shepherd Interfaith Vol.*, 202 W.Va. 81, 502 S.E.2d 178 (1998). However, in the instant case, Appellees presented evidence directly contradicting the allegations in Appellants' complaint that Appellees' activities caused increased sedimentation and fecal coliform contamination into Laurel Run that materially inter-

fered with Appellants' reasonable use of the stream. At that point, it was incumbent upon Appellees to adduce evidence to counter Appellees' evidence and raise a genuine issue of material fact which Appellants failed to do. Thus, the verified allegations in their complaint are not sufficient to withstand summary judgment under the facts of this case.[3]

In addition, Appellants assert that there is conflicting evidence concerning whether Appellees' timbering practices adhered to best management practices under forestry guidelines and whether there were sources of potential fecal cloriform contamination on Appellees' property. While this may be true, such evidence simply is not pertinent absent evidence that Appellees' activities materially increased sedimentation and fecal cloriform contamination in Laurel Run.

Appellants also assign as error the circuit court's finding that Appellants' historic use of the raw waters of Laurel Run for drinking and domestic purposes was unreasonable. According to Appellants, they have drunk the water for decades without any apparent harm and now they cannot drink the water because of Appellees' contamination of the stream. We reject this argument. The experts below agreed that Appellants' use of raw stream water for drinking and other domestic purposes is unsafe because of the presence of naturally occurring animal fecal matter and other organisms in the stream water. In light of this evidence, we do not believe that the circuit court erred in finding that Appellants' use of Laurel Run for drinking and other domestic purposes was not a reasonable one.

■ Therefore, based on the above, we find that Appellants have failed to present sufficient evidence to indicate that the facts are in dispute on the issue of whether Appellees' use of their property resulted in a material increase in sedimentation and contamination of Laurel Run. "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scin-

3. For the same reason, we find that Appellants' deposition testimony of how sedimentation occurs with each normal rainfall, how the sedimentation can be traced to the stream coming from Appellees' property, and how the sedimentation in the creek has adversely affected their traditional use of Laurel Run to be insufficient to withstand Appellees' summary judgment motion in light of the contradictory opinions of Appellees' experts.

tilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter*, 192 W.Va. at 192–193 451 S.E.2d at 758–759, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). We find that Appellants failed to satisfy their burden of proof by more than a mere scintilla of evidence and failed to produce evidence sufficient for a reasonable jury to find in their favor on their nuisance, interference with riparian rights, and negligence claims. Accordingly, summary judgment was proper in this case, and the circuit court's summary judgment order is affirmed.

 Appellants further assert, however, that the circuit court erred in granting Appellees' motion to strike Appellants' submission of additional discovery in support of their Rule 60(b) motion for relief and for reconsideration of judgment.[4] As noted above, the circuit court granted Appellees' motion for summary judgment by order entered October 6, 2004. Thereafter, on October 14, 2004, Appellants filed a motion for relief from judgment pursuant to Rule 60(b) and, in the alternative, they asked the circuit court to reconsider its grant of summary judgment. In support of this motion, Appellants filed nine deposition transcripts, an affidavit of Appellant Timothy Higgins, three videotapes, and Appellants' responses to Appellees' first set of interrogatories. Appellees responded with a memorandum in opposition to Appellants' motion for relief and reconsideration and with a motion to strike

Appellants' submission of additional discovery.

The circuit court apparently did not rule on Appellants' motion for relief and reconsideration of the circuit court's summary judgment order. Appellants filed their petition for appeal from the summary judgment order with this Court on February 3, 2005, and this Court granted the petition on May 9, 2005. On May 25, 2005, the circuit court entered an order granting Appellees' motion to strike discovery without ruling on Appellants' motion for relief and reconsideration. As a result, the record transmitted to this Court to review for purposes of this appeal does not contain the evidence submitted by Appellants after the summary judgment order was entered.

██ We find that the circuit court did not err in striking the evidence at issue from the record. As noted above, Appellants filed their motion for relief under Rule 60(b) and sought to present evidence not previously proffered. This Court has explained,

> It is established also that a Rule 60(b) motion does not present a forum for the consideration of evidence which was available but not offered at the original summary judgment motion.... The great weight of authority is that failure to file documents in an original motion does not convert the late filed documents into "newly discovered evidence." In the instant matter, the evidence is clear that the contents of Mr. Bell's affidavit was known prior to the summary judgment motion. In other words, the plaintiff was at liberty

**4.** The record reveals a procedural peculiarity with this case. As discussed above, subsequent to the circuit court's grant of summary judgment, Appellants filed a motion for relief and for reconsideration of the summary judgment, within ten days of the summary judgment order, and the circuit court apparently never ruled on this motion. Under our law,

> A motion for reconsideration filed within ten days of judgment being entered suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion.

Syllabus Point 7, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995). This means that Appellants' filing of their post-judgment mo-

tion for relief suspended the finality of the summary judgment order and made it unripe for appeal. We note that in the circuit court's failure to rule on Appellants' motion, Appellants' attorney had an affirmative duty to bring the matter to the circuit court's attention by motion or otherwise so that a proper order could have been entered. Nevertheless, Appellants' attorney did not do so but rather appealed the summary judgment order to this Court, and this Court granted the appeal. Significantly, at this point the parties have gone through the timely and costly process of filing their briefs and making their oral arguments before this Court. Therefore, at this late stage in the process, we deem it prudent to dispose of this case on its merits rather than send it back for the circuit court to rule on Appellants' post-judgment motion.

to raise this matter in a properly filed response to the motion for summary judgment, which it did not do.

*Powderidge Unit Owners v. Highland Prop.,* 196 W.Va. 692, 706, 474 S.E.2d 872, 886 (1996) (internal citations, quotation and punctuation omitted). In the case before us, Appellants were aware of the contents of the depositions, affidavits, and videotapes before Appellees filed their motion for summary judgment on September 7, 2004. Appellants could have presented this evidence with their response to the motion for summary judgment but failed to do so. Therefore, they were thereafter foreclosed from presenting the evidence as "newly discovered" pursuant to Rule 60(b). Accordingly, we find no error in the circuit court's order striking this evidence from the record.

Finally, Appellants contend that the circuit court erred in failing to grant their "Motion for Relief from Judgment, Or in the Alternative, to Reconsider the Court's Ruling Granting Defendants' Motion for Summary Judgment." First, we consider Appellants' Rule 60(b) motion for relief. Concerning our standard of review, we have held that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syllabus Point 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974). Appellants appear to base their motion on the grounds for relief set forth in Rule 60(b)'s subsection (2) "newly discovered evidence," and subsection (6) "any other reason justifying relief from the operation of the judgment." We have already discussed above why the evidence Appellants sought to adduce in support of their motion for relief was not newly discovered under Rule 60(b) and was not properly before the circuit court. Further, after reviewing Appellants' motion, we find that they have presented no reason justifying relief from the circuit court's summary judgment order. Instead, Appellants discuss the evidence that was untimely submitted below. Therefore, we find that the circuit court did not err in failing to grant Appellants Rule 60(b) motion for relief.

Appellants also style their motion as one to reconsider the circuit court's summary judgment order. As we have explained on previous occasions, our Rules of Civil Procedure do not provide for a motion to reconsider a judgment. Rather, this Court has held that,

> When a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion, the motion will be considered to be either a Rule 59(e) motion to alter or amend a judgment or a Rule 60(b) motion for relief from a judgment order. If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e). If the motion is filed outside the ten-day limit, it can only be addressed under Rule 60(b).

Syllabus Point 2, *Powderidge, supra.* Because the Appellants' motion was filed within ten days of the circuit court's summary judgment order, we will consider it a Rule 59(e) motion to alter or amend a judgment.

This Court has held, concerning our standard of reviewing this matter, that

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va.R.Civ.P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syllabus Point 1, *Wickland v. American Travellers Life Ins.,* 204 W.Va. 430, 513 S.E.2d 657 (1998). Because the underlying judgment is a summary judgment, we apply a *de novo* standard of review.

After carefully reviewing the Appellants' motion to reconsider, we first find that Appellants based many of their arguments on the evidence they improperly sought to introduce after the grant of summary judgment and which this Court will not consider. Otherwise, Appellants add nothing of substance to their original arguments in opposition to Appellees' motion for summary judgment. Therefore, we find that the circuit court did not err in failing to grant Appellants' motion to reconsider.

## IV.

## CONCLUSION

In sum, based on the above, we conclude that the circuit court did not err in granting summary judgment on behalf of Appellees in the Appellants' actions for nuisance, interference with riparian rights, and negligence. Accordingly, we affirm the October 6, 2004, order of the Circuit Court of Upshur County.

Affirmed.

STARCHER, J., dissenting.

(Filed Dec. 15, 2005)

I dissent because I believe the trial court had sufficient conflicting evidence on the issues in the instant case to preclude a grant of summary judgment on the issue of nuisance. I note that the appellants are not precluded from filing a new nuisance action in the event that they believe that their upstream neighbors continue to pollute the stream.